UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JASON SANDERS #305405,

                Plaintiff,                    Case No. 1:11-cv-892

v.                                      Honorable Robert Holmes Bell

WILLIE O. SMITH et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such

relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro

se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure

to state a claim against Defendants Breedlove, Clement, Cook, Delano, Derrin, Givens, Goodson,

Greenfield, Maholic, Marutiac, Norwood, Patterson, Payne, Reeves, Smuck, Thomas, Todd, Waters,

Wenzel, Wolever and the party identified as "court clerk."  The Court will serve the complaint

against Defendants Andrews, Beak, Bronson, Chaffer, Cunningham, Embry, Figueroa, Finnerty, Ganye, Gorman, Grandy, Huss, Kelly, D. King, J. King, Lamer, Sherk, J. Smith, and W. Smith.

## Discussion

I.     Factual allegations

Plaintiff Jason Sanders presently is incarcerated with the Michigan Department of Corrections (MDOC) and is housed at the Marquette Branch Prison (MBP) though the conduct alleged in the complaint occurred while he was housed at the Ionia Correctional facility (ICF). Plaintiff's complaint is divided into several major sections, including a list of Defendants (Compl. ¶¶ 3-40), a "Statement of Facts" (Compl. ¶¶ 42-112), and a list of "Legal Claims" (Compl. ¶¶ 110-128).

In the body of the complaint, Plaintiff names the following employees at ICF as Defendants: Warden Willie O. Smith; Deputy Warden Nannett Norwood; Assistant Deputy Warden Erica Huss; Resident Unit Manager (RUM) R. Embry; Assistant Resident Unit Supervisor (ARUS) Leslie Beak; ARUS J. Waters; Inspector Betty Goodson; Grievance Coordinator (unknown) Breedlove; Sergeant (unknown) Patterson; Sergeant (unknown) Kelly; Sergeant J. King; Sergeant (unknown) Grandy; Sergeant (unknown) Greenfield; Sergeant (unknown) Wenzel; Sergeant (unknown) Cunningham; ARUS (unknown) Thomas; Law Librarian D. Givens; Resident Unit Officer (RUO) (unknown) Wolever; Officer (unknown) Smith; RUO (unknown) Gorman; Officer (unknown) Lamer; RUO D. King; RUO (unknown) Bronson; Officer (unknown) Maholic; Officer (unknown) Chaffer; Officer Ruth Finnerty; Officer D. Andrews; RUO J. Ganye; Nurse (unknown) Delano; Nurse Supervisor Brian Derrin; Nurse Angela Todd; Officer (unknown) Figueroa; RUO J. Smith; and Hearings Officer (unknown) Marutiac.  In the caption of his complaint, Plaintiff also

names the following Defendants: (unknown) Sherk; Lieutenant (unknown) Reeves; and Sergeant (unknown) Cook.   Finally, Plaintiff sues a "court clerk" (name unknown).

Plaintiff's complaint recites a long litany of factual allegations, and then asserts approximately 21 different claims against specific Defendants (the claims are identified as "Claim I," "Claim II," etc.).  Each claim makes reference to the paragraphs of the complaint containing the relevant facts.  The following is a summary of the factual allegations of the complaint, broken into the major incidents that support Plaintiff's various claims.

1.      <u>Cell search</u> (Claim I)

In February 2009, during a major shakedown, Officers Finnerty and Ganye searched Plaintiff's cell and threw his belongings all over the cell.  When Plaintiff returned to his cell, he asked to speak with the Sgt. King.  King took Plaintiff to segregation and placed him in punitive confinement.

2.      <u>Misconduct charge and appeal</u>

Officer Finnerty wrote a major misconduct against Plaintiff, alleging that Plaintiff threatened to "'beat Finnerty's ass.'" (Compl. ¶ 45, docket #1.)  Defendant Marutiac held a hearing seven business days later.  Five officers testified that Plaintiff did not do what Finnerty alleged, and video of the incident supported their testimony.  Marutiac nevertheless found Plaintiff guilty of insolence and threatening behavior.  Plaintiff was ordered to serve seven days of detention, which he had already served, so he was released back into the general population.

Plaintiff appealed to the MDOC hearings administrator, who denied the appeal.  Plaintiff appealed to "the next step of judicial review," but his petition was returned because signatures by ICF business office personnel were not original signatures as required by court rule.

(Compl. ¶ 49.) Plaintiff requested original signatures from the ICF office, received the signatures, and refiled his petition. The petition was dismissed as untimely. Plaintiff attempted to explain to the court the reason for the untimeliness of his petition, but the court clerk would not accept Plaintiff's motion or legal papers.

3.    <u>Assault by Ganye and Finnerty</u> (Claims II - IV)

On February 3, 2010, Officers Ganye, Finnerty and Andrews escorted Plaintiff to the showers. In the shower area, Ganye "snatched the cuffs and yanked them upward in order to make [Plaintiff's] body jerk[.]" (Compl. ¶ 53.) Then Ganye and Finnerty started "slapping and punching" Plaintiff in his midsection, back and scrotum. (*Id.*) When Plaintiff bent over in pain, Defendants pushed him to the floor, causing him to land on his face and bust his lip. Defendants Andrews, D. King, Grandy, Bronson and J. King observed the incident as it occurred. A few minutes later, RUM Embry and another individual entered the unit. When Plaintiff attempted to speak and "yell out" to them, Sgt. King ordered Plaintiff to shut up. (Compl. ¶ 55.)

Finnerty, Ganye and Andrews escorted Plaintiff back to his cell where there was a pork food tray sitting on Plaintiff's bed. Plaintiff does not eat pork. Finnerty and Ganye "admitted" to Plaintiff that they had spit in his food tray. (Compl. ¶ 56.) When Plaintiff requested a non-pork tray, they refused.

On February 5, 7, and 8, 2010, Plaintiff attempted to report the assault to his psychologist, to Officer Casscaddan, and to RUM Embry. All of them said they would look into it. On February 8, Plaintiff filed a step I grievance on the officers involved in the assault and on those who did not report it, expressing fear for his life "due to retaliatory harassment and staff brutality." (Compl. ¶ 58.) On March 24, 2010, Sgt. Wenzel interviewed Plaintiff and rejected the grievance

- 4 -

because Plaintiff had waited until February 5 to attempt to resolve the issue, in violation of MDOC Policy Directive 02.03.130.[1] (Compl. ¶ 59.)  Plaintiff appealed the grievance, demanding a proper investigation.

On May 25, Sgt Greenfield was chosen to investigate the assault, but he failed to conduct an investigation.  He used the same step I response that Wenzel had prepared, crossed out Wenzel's name, put his name on the papers, and submitted the falsified documents and testimony. Plaintiff filed an appeal claiming that Embry, Wenzel and Greenfield had failed to investigate the claim and had falsified documents.  ARUS Thomas interviewed Plaintiff about the incidents alleged in the grievances.  On May 28, Warden Smith forwarded the issue for further investigation.

On August 11, Plaintiff received a step III response from the MDOC Director stating that a new investigator had been assigned.  Because a proper investigation was the only relief requested by Plaintiff, once the investigation was completed, the issue would be considered resolved.

Plaintiff was then interviewed by Lieutenant Cheeks regarding the assault.  She told Plaintiff that the video footage (of the assault) no longer existed.

4.    <u>Threat by Ganye</u> (Claims V-VII)

On February 11, 2010, Officer Ganye placed a note on Plaintiff's cell window that included the names, addresses and phone numbers of Plaintiff's family members.  The note had the word "Predator" at the bottom.  (Compl. ¶ 60.)  Officer Ganye told Plaintiff "if you don't stop that grievance" before she placed the note (*id.* at ¶ 61) (presumably referring to Plaintiff's grievance regarding Ganye's assault on Plaintiff).  After placing the note, Ganye said "if that doesn't work my

---

[1]MDOC Policy Directive 03.02.130 requires prisoners to attempt to resolve grievable issues with staff within *two business days* of becoming aware of the issue.  *See id.* at ¶ P (eff. Mar. 5, 2007).

cousins will go visit them if you don't stop it." (*Id.*) Sgt. Cunningham was headed to a nearby cell at the time, and Plaintiff demanded that Cunningham take the note down and turn it in for investigation. Plaintiff's family later received "vulgar and threatening letters and phone calls from unknown prisoners." (Compl. ¶ 62.) The next day, Plaintiff spoke to ARUS Cascadden and RUM Embry about the incident.

On February 15, Plaintiff filed a step I grievance regarding Ganye's threats. It was rejected by Sgt. Wenzel and RUM Embry because Plaintiff failed to provide evidence to substantiate his claim. Plaintiff appealed to step II, claiming that Wenzel and Embry failed to investigate. On August 26, 2010, Warden Smith responded that Ganye and Cunningham were interviewed and both denied the claim.

Plaintiff later spoke with Cunningham, who told Plaintiff that he did not recall the incident involving Ganye, he was never interviewed by the step II respondent, and he did not make the statement that was in the step II response. On September 5, Plaintiff filed a step III appeal claiming that Ganye and Cunningham had made false statements and that Wenzel and Embry failed to preserve the video footage of the incident. On September 10, the Director's office upheld the step II response by Warden Smith.

### 5. Cell conditions / destruction of property (Claim IX)

On May 24, 2010, psychologist Bob Davis decreased Plaintiff's "suicide prevention status." (Compl. ¶ 77.) Plaintiff had nothing in his possession but his suicide prevention gown. Over the next several days, Plaintiff requested cell furnishings, including his property, clothes and legal papers. By May 26, staff had not responded to the status decrease, so Davis placed a new management plan on Plaintiff's cell door. Plaintiff again requested his property and cell furnishings.

- 6 -

Officer Smuck came to Plaintiff's cell, and when Plaintiff inquired about his clothes and other property, Smuck told him, "You['re] not getting shit now you ungr[ate]ful asshole." (Compl. ¶ 78.) Apparently, all of Plaintiff's property, including his "legal footlockers," had been thrown away. (Compl. ¶ 79.)  Smuck told Plaintiff that RUO Wolever ordered Smuck to throw it away.

Plaintiff alleges that he "continuously requested Q-master and was denied" for two-and-a-half months.  (Compl. ¶ 81.)  Neither ARUS Beak nor RUM Embry attempted to get Plaintiff "emergency clothing."  (*Id.*)

In June, Plaintiff filed a grievance regarding the destruction of his property by Officer Smuck.  Plaintiff received a step I response and appealed it to step II, but the record of the grievance disappeared after it was sent to Defendant Breedlove's office.

On August 15, Plaintiff received a receipt and order "from the Administrative Board, reimbursing him for personal property, mandatory health items that were los[t] and destroyed by [ICF personnel] outside of [Plaintiff's] possession."  (Compl. ¶ 108.)

### 6.    Assault by Gorman and Lamer (Claims X, XIX)

On July 12, Officers Gorman and Lamer removed Plaintiff's handcuffs as he stood in his cell.  After the cuffs were off, both officers slammed Plaintiff's fingers into the food slot, entrapping his fingers.  When Plaintiff jumped back and yelled in pain, he was able to pull two of his fingers out.  His pinky finger was cut and was squirting blood on the door and floor.  The officers leaned harder on the slot and Officer Gorman said "stop resisting."  (Compl. ¶ 84.)  When Gorman looked back to see if anyone was watching, Plaintiff removed his hand from the slot.

Later, Plaintiff "repeatedly" filed grievances to Grievance Coordinator Breedlove regarding the assault, but Breedlove refused to respond. Plaintiff also wrote to the Director's office and to Warden Smith requesting that Breedlove process the grievance.

#### 7. Care for Plaintiff's finger (Claim XI)

When Plaintiff explained the assault to Sgt. King, he was taken to healthcare, where Nurse Marallis stitched up Plaintiff's finger. Later that day, the cast and dressings on Plaintiff's finger began to peel off in the shower. Plaintiff reported this to Nurse Delano, who stated, "I'm not doing shit, they'll dress your hand in the morning." (Compl. ¶ 89.)

The next day, July 13, Plaintiff reported pain and tingling in his hand and finger. He requested band-aids and gauze pads to dress the wound. Nurse Supervisor Derrin said that he would look into it and come back during lunch time. Nurse Vastifer made rounds at lunch and told Plaintiff that Derrin never mentioned Plaintiff's complaint. That evening, Plaintiff complained to Nurse Todd that his finger was swollen and purplish and was leaking yellowish fluid with blood. Nurse Todd said she would return but she never did.

On July 16, Nurse Marallis gave Plaintiff bandages and gauze pads. She sprayed Plaintiff's finger and re-wrapped it.

#### 8. Threats / conduct by Greenfield, Bronson and Maholic (Claim XII)

On July 14, after a major shakedown, Sgt. Greenfield threatened to "'beat [Plaintiff's] ass," and ordered Officers Bronson and Maholic to take Plaintiff to his cell and leave him in handcuffs. (Compl. ¶ 93.) The officers left Plaintiff in handcuffs in his cell for three hours and refused him his dinner.

9.    Confinement / cell conditions (Claims XIII-XIV)

On July 16, Officers Embry and Beak had Officer Gorman pull Plaintiff out of his cell to speak with him about his grievances. Plaintiff was put into a holding cell for three to four hours and his property was packed up. Plaintiff was taken to detention and placed in a "solitary punitive restriction cell with no lights, no mattress or cell furnishings . . . poor air ventilation, no fire sprinkler or anything to cover with at night during cold temperatures" for eight-and-a-half weeks. (Compl. ¶ 94.) Plaintiff alleges that he has a "heat related illness [accommodation]" and high blood pressure, in addition to the hand injury that he had recently suffered. (Compl. ¶ 85.) He contends that he received "no relief for insomnia, back [and] neck pain, headaches [and] hay fever," or any relief from "these conditions of confinement." (Compl. ¶ 95.)

10.    Food loaf and paper restrictions (Claim XV)

Plaintiff alleges that he was placed on food loaf and paper restriction on June 3, 2010. He contested the restrictions and ARUS Barber informed another officer, Jones (who is not named as a defendant in this action), to remove the restriction. Jones removed the restrictions from Plaintiff's cell door and told Plaintiff to "stop complaining or he would not eat at all." (Compl. ¶ 99.) Plaintiff was given food loaf for the remainder of the restriction period even though the restriction had been revoked. He continued on paper restriction for six months. On June 26, Plaintiff was placed on another food loaf restriction for a threatening behavior misconduct.

At an unspecified time, Plaintiff filed a grievance related to the restrictions. ARUS Beak indicated that she would discuss with staff the issue of verifying restrictions. On August 6, Sgt. Kelly reviewed Plaintiff's restrictions and determined that Plaintiff was on nine restrictions, four of which were not supported by a misconduct or record of disruptive behavior, and two of which had

been extended for no reason and without any hearing.

11.     Access to law library (Claim XVI)

On August 5, Plaintiff filed a grievance asserting that the library refused to send him requested law books and legal materials over a period of three to six months.  Captain Sanchez investigated the grievance and found that Plaintiff was being denied law materials and general books.

12.     Destruction of paper property (Claim XVIIa)

On August 17, Plaintiff was pulled out of his cell to a holding cage so that he could review his mail.  When he returned to his cell, he discovered that all of his paper property had disappeared.

13.     Prisoner mail (Claim XVIIb)

On July 21, Plaintiff reported that the unit's mail was not being picked up and passed out. Plaintiff alleges that ARUS Waters and Officer Payne were not making legal mail rounds, in violation of prison policy.

14.     Deduction from Plaintiff's funds (Claim XVIII)

When Plaintiff received his reimbursement checks from the Administrative Board, the ICF accountant processed the checks and deducted from Plaintiff's account amounts for victim's restitution, court filing fees, institutional debts and court costs.  Plaintiff contends that these sums had already been taken from his account before he received the money from the Administrative Board.  Plaintiff filed a grievance regarding this issue, which was rejected by Accountant Clement and Warden Smith.

15.     Cell furnishings (Claim XX)

On September 13, after Plaintiff was placed on suicide prevention status, all of his

cell furnishings were removed, including his mattress, sheets, blankets and pillow.[2]  Officer J. Smith

charged Plaintiff with misuse or destruction of property.  After Plaintiff was taken off of suicide

prevention status, he received an administrative hearing regarding the misconduct charge and was

found not guilty.  Plaintiff continued to be denied cell furnishings for thirty-eight days.  Plaintiff

"continuously attempted to [grieve] the restriction but his grievance was thrown away."  (Compl.

¶ 112.)  He kited Warden Smith and Grievance Coordinator Breedlove but received no response

(Claim XXI).

As relief for his various claims, Plaintiff seeks declaratory and injunctive relief, as

well as compensatory and punitive damages.

II.     Immunity

Plaintiff alleges that an unnamed court clerk rejected his court filings after his appeal

of his misconduct conviction was rejected as untimely.  The court clerk is immune from Plaintiff's

damages claim.  "Quasi-judicial immunity extends to those persons performing tasks so integral or

intertwined with the judicial process that these persons are considered an arm of the judicial officer

who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled

to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v.*

*Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir.

1997) (one who acts as a judge's designee in carrying out a function for which the judge is immune

is also protected from suit seeking monetary damages)); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th

---

[2]According to MDOC policies, prisoners exhibiting suicidal behavior are placed in an observation cell that is stripped of all furnishings other than a mattress.  MDOC Policy Directive 04.06.114 ¶¶ N, P (12/20/1999).  All personal property is removed from the prisoner except for a suicide prevention gown.  *Id.*  If the prisoner uses the mattress to impede observation or commit self-injury, officials will remove it from the cell.  *Id.*

- 11 -

Cir. 1988) (clerk of court was entitled to quasi-judicial immunity for issuing a warrant as directed by the court); *accord Carlton v. Baird*, No. 03-1294, 2003 WL 21920023, at *1 (6th Cir. Aug. 8, 2003) (state court clerk's office employees were entitled to quasi-judicial immunity from state prison inmate's § 1983 claim); *Bradley v. United States*, 84 Fed. App'x 492 (6th Cir. 2003) (federal court clerk). Defendant "court clerk" clearly was acting on behalf of the court when he/she rejected Plaintiff's pleadings. Consequently, Defendant court clerk will be dismissed because he/she is entitled to immunity from Plaintiff's damages claims.

III.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

- 12 -

– that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### Claim I: retaliation

    Plaintiff alleges that  Defendant Finnerty retaliated against Plaintiff in February 2009 by searching his cell and throwing Plaintiff's "clothes, paperwork and food items" all over the cell. (Compl. ¶ 42.)  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Plaintiff's

allegations fail to satisfy the first and third elements of a retaliation claim. Plaintiff does not identify any "protected conduct" or allege any connection between protected conduct and Defendant Finnerty's actions. Therefore, Claim I fails to state a retaliation claim.

### Claims II, IV: assault

Plaintiff alleges that he was assaulted by Defendants Finnerty and Ganye. Defendants Andrews, Grandy, D. King, J. King and Bronson were aware of the incident and did nothing to stop it. Upon review, the Court determines that the allegations in Claims II and IV are sufficient to warrant service.

### Claim III: assault (failure to supervise)

Plaintiff alleges that Defendants Beak, J. King, Embry, Norwood, Huss and Warden Smith failed to supervise Plaintiff's unit to protect Plaintiff from the assault by Finnerty and Ganye. Inmates have a constitutionally-protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 828; *Greene v. Bowles*, 261 F.3d 290, 294 (6th Cir. 2004). To be deliberately indifferent, "the official [must] know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff alleges no facts indicating that Defendants Beak, Embry, Norwood, Huss or Warden Smith were aware of, and disregarded, a risk that officers would assault Plaintiff.

- 14 -

To the extent Plaintiff sues Defendants because of their supervisory authority or control over other Defendants, his claim must fail because government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Because Plaintiff has not alleged that Defendants Beak, Embry, Norwood, Huss or Warden Smith engaged in any active unconstitutional behavior with respect to the assault by Finnerty and Ganye, he fails to state a claim against them.

To the extent Plaintiff asserts that Defendant J. King failed to protect Plaintiff, the Court concludes that Plaintiff's allegations are sufficient to warrant service against Defendant King. Because the allegations against J. King in Claim III are duplicative of the allegations in Claims II and IV, however, the Court will dismiss Claim III for failure to state a claim.

- 15 -

### Claims V, VI:  threatening conduct

In Claims V and VI, Plaintiff contends that Ganye retaliated against Plaintiff by posting a note on Plaintiff's cell door that included information regarding Plaintiff's family and referred to Plaintiff as a predator.  Cunningham is named as a defendant because Plaintiff asked him to remove the note and he did not do so.  Upon review, the Court determines that the allegations in Claims V and VI are sufficient to warrant service against Ganye and Cunningham.

### Claim VII:  investigation of the assault

Plaintiff contends that Defendants Smith, Breedlove, Cunningham, Wenzel, Greenfield, Goodson and Embry falsified documents during the grievance procedure, destroyed physical evidence of the assault, and failed to properly investigate the assault.  Plaintiff contends that Defendants' conduct denied him his right to due process and his right of access to the courts.

Claim VII fails to state a due-process claim because Plaintiff lacks a cognizable interest in the prison grievance procedure.  The Sixth Circuit and other circuit courts have held that there is no constitutionally-protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Moreover, Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct in connection with the grievance procedure did not deprive him of due process.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See  Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with access to the courts, however, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3).  The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Christopher*, 536 U.S. at 416.  Plaintiff fails to state an access-to-courts claim because he has not pleaded actual injury to pending or contemplated litigation.

- 17 -

Furthermore, Plaintiff's right of access to the courts cannot be compromised by deficiencies in the prison grievance process. While the PLRA requires exhaustion of administrative remedies before bringing a civil rights claim, it only mandates exhaustion of "available" administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process, then process was not "available" to him, and exhaustion would not be a prerequisite for initiation of a civil rights action.

For the foregoing reasons, therefore, Claim VII fails to state a claim.

### Claim IX:[3] destruction of property & paper restriction

Plaintiff alleges that Defendants Wolever and Smuck "trashed" his "clothes, legal property and regular property, cell furnishings and placed [Plaintiff] on an unlawful paper restriction."[4] (Compl. ¶ 117.) These actions, he contends, constituted cruel and unusual punishment under the Eighth Amendment, and violated his right to due process and his right of access to the Courts.

Under the Eighth Amendment, punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v.*

---

[3]There is no "Claim VIII" in the complaint.

[4]According to MDOC Policy Directive 04.05.120 (eff. June 29, 2009), a prisoner in any form of segregation may be placed on a paper restriction. *Id.* ¶ II. However, prisoners on paper restriction are allowed access to misconduct reports, grievances and legal papers at reasonable intervals. *Id.* ¶ JJ. Moreover, other paper materials can be obtained upon request, with the warden's approval. *Id.* ¶ KK.

*Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Generally, a failure to protect a prisoner's personal property does not state an Eighth Amendment claim.  *Hunter v. Sherman*, 48 F. App'x 611, 612 (6th Cir. 2002).  There is no indication that Defendants' conduct deprived Plaintiff of the minimum civilized measure of life's necessities, or implicated Plaintiff's health or safety.  *See Helling*, 509 U.S. at 35.  Consequently, the paper restriction and the destruction of Plaintiff's property do not rise to the level of an Eighth Amendment violation.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  The Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  In the absence of a protected liberty or property interest, a prisoner is entitled to the protections of due process when a deprivation imposes

- 19 -

an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 488-87 (1995).

The paper restriction does not implicate Plaintiff's right to due process because Plaintiff does not have a protected liberty or property interest in obtaining the amount of paper that he desires, and such a restriction is not a significant and atypical hardship.

Moreover, Plaintiff's due-process claim based on the destruction of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Indeed, he alleges that the state administrative board reimbursed him for the loss. (Compl. ¶ 108.) Plaintiff does not allege any reason why this

compensation was inadequate.  Even assuming it was inadequate, Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation of his property.

To the extent Plaintiff contends that the paper restriction and the destruction of his legal property violated his right of access to the courts, he has not alleged any injury as a result of Defendants' conduct.  *See Lewis*, 518 U.S. at 349 (requiring a showing of actual injury to a pending or contemplated claim); *Christopher*, 536 U.S. at 415 (holding that the underlying cause of action on which the injury is based must be set forth in the complaint).  Consequently, Plaintiff does not state an access-to courts claim.

For the foregoing reasons, therefore, Claim IX fails to state a claim.

### Claim X: excessive force / assault

Plaintiff alleges that Defendants Gorman and Lamer violated his rights under the Eighth Amendment when they jammed his hand in the food tray.  The Court concludes that the allegations in Claim X are sufficient to survive dismissal at this stage.

### Claim XI: medical care for Plaintiff's finger

Plaintiff contends that Defendants Delano, Todd and Derrin violated his rights under the Eighth Amendment when they did not provide medical assistance for his finger.  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle v. Gamble*, 429 U.S. 102, 104-05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  To state a claim, Plaintiff  must allege that the medical need at issue is sufficiently serious.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Moreover, Plaintiff show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  In other words, "the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff has not alleged a sufficiently serious medical need. Plaintiff requested medical assistance from Defendants within a few hours or days after receiving stitches for a lacerated finger. Plaintiff's symptoms–pain, swelling, tingling and drainage–might reasonably be expected following such injury and treatment. In other words, the symptoms alleged by Plaintiff were not indicative of a substantial risk of serious harm to Plaintiff in the absence of immediate care by Defendants. Indeed, Plaintiff alleges that he was again treated by a nurse a few days after the incident, and there is no allegation that Defendants' failure to provide treatment for Plaintiff before that time caused any serious harm to Plaintiff, or posed a substantial risk thereof. Therefore, Claim XI fails to state a claim.

### Claim XII: harassment / use of restraints

Plaintiff asserts that Defendant Greenfield told Plaintiff that he would "beat his ass" and then ordered Bronson and Maholic to take Plaintiff to his cell and leave him in his cuffs. Plaintiff contends that his Eighth Amendment rights were violated because he was left in a cell for three hours with his hands cuffed behind his back and he was forced to miss a meal. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted).

First, Greenfield's threatening statements do not make out an Eighth Amendment claim because the use of harassing or threatening language by a prison official, although unprofessional and deplorable, does not constitute punishment within the meaning of the Eighth

Amendment.  *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th

Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the

Eighth Amendment prohibits); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec.

13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion

of an inmate's constitutional rights.").  Nothing in Plaintiff's complaint suggests that Defendant

Greenfield's statements were anything more than idle threats.

Second, Plaintiff's temporary restraint in handcuffs does not state a claim.  In *Barker*

*v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), the Sixth Circuit analyzed a similar claim involving the

use of restraints.  The plaintiff in that case alleged that prison officials left him handcuffed in his cell

for twelve hours and he missed a meal.  *Id*. at 434.  The plaintiff asserted that he had been subjected

to excessive force and inhumane conditions of confinement in violation of the Eighth Amendment,

and the court analyzed his claim under both standards.  *Id*.  Whether a prison official's conduct

constitutes excessive force in violation of the Eighth Amendment depends on "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  A conditions of confinement claim, in

contrast, requires a finding of deliberate indifference, that is, "that the official acted or failed to act

despite his knowledge of a substantial risk of serious harm."  *Farmer*, 511 U.S. at 842.

The court in *Barker* found that both standards were met because the plaintiff "could

not maintain a comfortable position for an extended period of time," and he was denied access to

water and a restroom, which "subject[ed] him to a significant risk of wrist and arm problems,

dehydration and . . . pain and damage to his bladder."  *Id.* at 434.  The Sixth Circuit cited other cases

in which the use of restraints resulted in the denial of the minimal civilized measure of life's

necessities.  *See Hope v. Pelzer*, 536 U.S. 730, 742 (2002) (restraining prisoner in uncomfortable position and denying him access to water for a seven-hour period violated Eighth Amendment); *Dellis*, 257 F.3d at 512 (limiting access to water for three days violated the Eighth Amendment); *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (limiting access to food and water for four days and toilet overnight violated Eighth Amendment); *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) (restraining prisoners in uncomfortable position for extended period violated Eighth Amendment).

In contrast to the foregoing cases, Plaintiff was restrained in handcuffs for only a few hours.  He does not allege that he was denied food, water, or any other necessities of life, for an extended period of time.  Nor does he allege that he suffered any significant discomfort or pain as a result of Defendants' use of the restraints, apart from the denial of a single meal.  The denial of one meal does not constitute a denial of the minimal civilized measure of life's necessities, nor does it pose a sufficiently serious risk to Plaintiff's health as to violate the Eighth Amendment.  Accordingly, Claim XII fails to state a claim.

### Claims XIII, XIV:  solitary confinement

Plaintiff alleges that Defendants Embry, Beak, Huss, and Warden Smith violated his rights under the Eighth Amendment when they had Gorman place Plaintiff in solitary confinement under unconstitutional conditions of confinement.  Plaintiff was placed in solitary confinement for several weeks in a cell without a mattress, blanket, lights or cell furnishings.  The cell had poor ventilation and ranged in temperature from 40 to 80 degrees.  Plaintiff further alleges that Defendants

Figueroa, Kelly, Sherk, Finnerty, J. Smith,[5] and Chaffer worked during Plaintiff's stay in solitary confinement and failed to report or correct his situation.  The Court concludes that Plaintiff's allegations against the foregoing Defendants are sufficient to survive dismissal at this stage.

Plaintiff also alleges that Defendant Norwood failed to supervise or prevent Plaintiff from being retaliated against by being placed in solitary confinement.  Plaintiff does not state a claim against Norwood.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *See* Claim III, *supra*. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has not alleged that Defendant Norwood engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against her.

### Claim XV: cell conditions / restrictions

Plaintiff contends that Defendants Kelly, Huss, Norwood and Warden Smith enforced multiple "unlawful" restrictions against Plaintiff in retaliation for protected conduct, in violation of due process and in violation of Plaintiff's rights under the Eighth Amendment.  Plaintiff's retaliation claim is purely conclusory because he does not identify a connection between the restrictions and any protected conduct on his part.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (requiring, as part of a retaliation claim, that the plaintiff set forth facts demonstrating that the adverse action was motivated, at least in part, by the protected conduct); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[5]Plaintiff refers to Defendant "Smith" in Claim XIV, though there are two Defendants with the surname Smith. Because Plaintiff refers to "W. Smith" (i.e., Warden Willie Smith) in Claim XIII, the Court assumes that Plaintiff refers to RUO J. Smith in Claim XIV.  Plaintiff also refers to "Rishe" in Claim XIV, though Rishe is not named as a Defendant.

statements, do not suffice.").

Plaintiff does not state a due-process claim because he has not alleged that Defendants deprived him of a protected property or liberty interest. A restraint imposed in prison does not give rise to a protected liberty interest unless it constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A paper restriction does not impose an atypical and significant hardship.[6] Moreover, the Sixth Circuit has held that placement on food loaf does not implicate a liberty interest. *See Griffis v. Gundy*, 47 F. App'x 327 (6th Cir. 2002); *Turnboe v. Gundy*, 25 F. App'x 292, 293 (6th Cir. 2001). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Furthermore, Plaintiff does not state an Eighth Amendment claim because there is no indication that Defendants deprived Plaintiff of a minimal civilized measure of life's necessities, or were deliberately indifferent to Plaintiff's health or safety. *See Helling*, 509 U.S. at 35. The restrictions identified by Plaintiff, food loaf and paper restrictions, do not implicate Plaintiff's health or safety. *See Griffis*, 47 F. App'x at 328 (placement on food loaf does not implicate the Eighth Amendment).

Finally, to the extent Plaintiff contends that the restrictions violated prison policy, a violation of prison policy does not, in itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir.

---

[6]Prisoners on paper restriction are still entitled to grievance forms, misconduct reports, legal documents, items from the law library and legal mail, and may have paper and envelopes with approval from the warden. MDOC Policy Directive 04.05.120, ¶¶ OO-PP (Dec. 7, 2009).

1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

For the foregoing reasons, therefore, Claim XV fails to state a claim.

### Claim XVI: access to library books

Plaintiff asserts that Defendant Givens denied Plaintiff certain books from the law library, in violation of his right of access to the courts, his right to equal protection, and his right to be free from retaliation.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis*, 518 U.S. at 354; *Bounds*, 430 U.S. at 821; *Wolff*, 418 U.S. at 556.  In order to state a viable claim for interference with his access to the courts, however, a plaintiff must allege actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis*, 257 F.3d at 511.  Plaintiff does not allege any injury resulting from Givens's conduct; accordingly, he fails to state an access-to-courts claim.

Moreover, Plaintiff's equal protection and retaliation claims are wholly conclusory. To the extent he asserts an equal-protection violation, Plaintiff does not allege that Givens discriminated against him or treated him differently from other, similarly situated individuals, *see Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To the extent Plaintiff asserts that Givens retaliated against him, Plaintiff does not identify any protected conduct that might have motivated her actions.  *See Thaddeus-X*, 175 F.3d at 394 (setting forth the elements of a retaliation claim).

Therefore, Claim XVI fails to state a claim.

### Claim XVIIa:[7] destruction of Plaintiff's property

Plaintiff asserts that Defendant Waters purposely or accidentally failed to protect Plaintiff's legal and personal property, which was secured in Waters's office, in violation of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments.

Plaintiff "cannot state a claim under the Eighth Amendment for deliberate indifference to the security of his property." *Hunter*, 49 F. App'x at 612 (citing *Farmer*, 511 U.S. at 534).

Furthermore, Plaintiff's due process claim fails because the doctrine of *Parratt v. Taylor* applies and Plaintiff has not alleged any reason why state post-deprivation remedies are inadequate to remedy his loss of property. *See* Claim IX, *supra*.

Finally, Plaintiff does not state an access-to-courts claim because he has not alleged any injury to pending or contemplated litigation as a result of Waters's actions. *See Lewis*, 518 U.S. at 349.

Therefore, Claim XVIIa fails to state a claim.

### Claim XVIIb:  failure to process legal mail

Plaintiff further alleges that Defendants Payne and Waters failed to process legal mail in unit 1 on July 21, 2010.  Defendants' failure to follow prison policy does not, in itself, state a § 1983 claim.   *Laney*, 501 F.3d at 581 n.2.  Moreover, Defendants conduct does not, in itself, state a claim based on the denial of Plaintiff's right of access to the courts because Plaintiff does not

---

[7]There are two claims identified as "Claim XVII" (*see* Compl. ¶¶ 124-25, Page ID##30, 31).  The Court will refer to them as "Claim XVIIa" and "Claim XVIIb," respectively.

identify any injury attributable Defendants' conduct. *See Lewis*, 518 U.S. at 349. Indeed, there is no indication that Defendants' actions had any impact on him at all. To the extent Plaintiff attempts to assert the rights of other prisoners in the unit, he lacks standing to do so. *See Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. April 17, 1996). Therefore, Claim XVIIb also fails to state a claim.

### Claim XVIII: removal of funds from Plaintiff's account

Plaintiff asserts that Warden Smith and Defendant Clement improperly removed funds from Plaintiff's prison account. As in Claim IX, *supra*, Plaintiff has not and cannot meet his burden under *Parratt v. Taylor*. Plaintiff has not alleged that state post-deprivation remedies are inadequate to remedy the loss of these funds. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of funds from his prison account. *See Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80; *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Consequently, Claim XVIII fails to state a claim.

### Claim XIX:[8] failure to protect Plaintiff from assault

Plaintiff asserts that Defendants King, Patterson, Embry, W. Smith and Beak violated his Eighth Amendment rights by failing to protect him from the assault by Defendants Gorman and Lamer on July 12, 2010. As discussed in Claim III, *supra*, inmates have a constitutionally-protected

---

[8]Identified in the complaint as "Claim XVIV."

right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833.  To violate Plaintiff's rights under the Eighth Amendment, however, an official "[must] know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff alleges no facts indicating that Defendants King, Patterson, Embry, Warden Smith or Beak were aware of a risk that Plaintiff would be assaulted by prison guards, much less that they were deliberately indifferent to a serious risk of harm to Plaintiff.  Moreover, as discussed with respect to Claim III, *supra*, Defendants cannot be liable under § 1983 merely because of their supervisory role or authority over other Defendants, or because they failed to act based on information contained in a grievance.  Accordingly, Claim XIX fails to state a claim.

### Claim XX: mattress, sheets & covering restrictions

Plaintiff asserts that he was placed on a "mattress, sheets & bed covering restriction" as a result of his placement on suicide prevention status and a misconduct charge for destruction of property.  (Compl. ¶ 127.)  He contends that Defendants J. Smith, Cook, Kelly, Reeves, Waters, Payne, Huss, Norwood and Warden Smith continued to enforce the restrictions for 38 days, "knowing [Plaintiff] had no clothes," after he was removed from suicide prevention status and after he was found not guilty of the misconduct.  (*Id.*)  Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments.  Plaintiff has not stated an Eighth Amendment claim because he has not alleged that Defendants disregarded a substantial risk of harm to his health or safety.  *See Farmer*, 511 U.S. at 834.  Indeed, Plaintiff has not alleged any harm, or risk thereof, as a result of the restrictions.  *See Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) (affirming

dismissal of an Eighth Amendment claim because the prisoner "neither alleged nor presented any evidence that the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm"); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir.) (holding that the prisoner's Eighth Amendment rights were not violated when officials "depriv[ed] him of a mattress for a two week period") (citing *Schroeder v. Kaplan*, No. 93-17123, 1995 U.S.App. LEXIS 18915, at *2 (9th Cir. July 7, 1995) (requiring prisoner to sleep on floor for a four-week period without use of mattress does not violate the Eighth Amendment)).

Moreover, the restrictions did not violate Plaintiff's right to due process.  The restrictions imposed on Plaintiff did not implicate any protected liberty or property interests and they were not so "atypical and significant" as to give rise to a due-process claim.  *See Sandin*, 515 U.S. at 484.  According to the complaint, the restrictions were merely temporary.  The Supreme Court has held that confinement in disciplinary segregation for 30 days does not implicate a liberty interest. *Id.* at 486.  Moreover, the Sixth Circuit has held confinement in administrative segregation gives rise to a due process claim only in "extreme circumstances."  *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  Thus, even a 61-day stay in administrative segregation is not an atypical and significant hardship.  *Id.*  By extension, the 38-day continuation of the restrictions described by Plaintiff did not impose an atypical and significant hardship.  Therefore, Claim XX fails to state a claim.

### Claim XXI:  failure to process grievances

Plaintiff asserts that Defendant Breedlove's failure to process certain prison grievances obstructed Plaintiff's right to access the courts and denied him his right to due process and equal protection.  Plaintiff's equal-protection claim is purely conclusory.  He does not identify

any similarly-situated prisoners who were treated differently.  *See Vill. of Willowbrook*, 528 U.S. at 564.  Moreover, as discussed in connection with Claim VII, *supra*, Breedlove's failure to process grievances does implicate Plaintiff's right to due process or right of access to the courts.  Finally, to the extent Plaintiff sues Breedlove for failing to act on information contained in Plaintiff's grievances, Breedlove cannot be held liable on this basis alone.  *See Shehee*, 199 F.3d at 300.

For the foregoing reasons, therefore, Claim XXI fails to state a claim.

### Defendants Marutiac, Thomas

Defendants Marutiac and Thomas are mentioned in the portion of the complaint setting forth Plaintiff's factual allegations, but they are not identified as defendants with respect to any of Plaintiff's claims.  Moreover, the Court cannot discern a viable § 1983 claim against them. Plaintiff alleges that Defendant Marutiac held an administrative hearing and that Defendant Thomas interviewed Plaintiff regarding certain grievances.  There is no indication that the conduct of either Defendant was improper or otherwise violated Plaintiff's constitutional rights.  Consequently, Defendants Marutiac and Thomas will be dismissed for failure to state a claim.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Claims I, III, VII, IX, XI, XII, XV, XVI, XVII, XVIII, XIX (identified as "Claim XVIV"), XX and XXI, and Defendants Breedlove, Clement, Cook, Delano, Derrin, Givens, Goodson, Greenfield, Maholic, Marutiac, Norwood, Patterson, Payne, Reeves, Smuck, Thomas, Todd, Waters, Wenzel, Wolever and "court clerk" will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint with respect to Claims II, IV, V, VI, X, XIII and XIV against Defendants Andrews,

- 32 -

Beak, Bronson, Chaffer, Cunningham, Embry, Figueroa, Finnerty, Ganye, Gorman, Grandy, Huss,

Kelly, D. King, J. King, Lamer, Sherk, J. Smith, and W. Smith.

An Order consistent with this Opinion will be entered.


Dated: <u>November 27, 2011</u>                        <u>/s/ Robert Holmes Bell</u>
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE