UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

|  |  |  |
|---|---|---|
| JASON L. SANDERS, # 305405, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-892 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| WILLIE O. SMITH, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983.

Plaintiff is currently an inmate at the Marquette Branch Prison. (docket # 107). This lawsuit arises

out of his confinement at the Ionia Maximum Correctional Facility (ICF) during the period from

February 3, 2010, through September 15, 2010. The defendants are:

1. Warden Willie O. Smith;

2. Assistant Deputy Warden (ADW) Erica Huss;

3. Assistant Resident Supervisor (ARUS) Leslie Beak;

4. Officer Dena Andrews;

5. Resident Unit Officer (RUO) Ramon Bronson;

6. Officer Brian Chaffee;

7. Sergeant Mario Cunningham;

8. Resident Unit Manager (RUM) Ronald Embry;

9. Officer Consuelo Figueroa;

10. Officer Ruth Finnerty;

11.     RUO Jennifer Gagne;

12.     RUO Paul Gorman;

13.     Sergeant Dennis Grandy;

14.     Sergeant John Kelley;

15.     RUO Donald King;

16.     Sergeant Christopher King;

17.     Officer Unknown Lames;

18.     Officer Aaron Sherk;

19.     RUO Jeremy Smith; and

20.     RUO D. Gayne.

Plaintiff sues all defendants in their individual capacities and seeks an award of damages.[1]

Plaintiff alleges that on February 3, 2010, he was assaulted by two female employees

of the Michigan Department of Corrections (MDOC), RUO Jennifer Gagne and Officer Ruth

Finnerty, in violation of his Eighth Amendment rights.  He alleges that defendants Dena Andrews,

---

[1]All plaintiff's claims for injunctive relief were dismissed as moot.  All his claims for damages against defendants in their official capacities were dismissed with prejudice because they are barred by Eleventh Amendment immunity.  (7/13/12 Order, docket # 67).  The court denied plaintiff's motion for reconsideration.  (3/20/13 Order, docket # 95).

The one-defendant discrepancy between the 20 defendants listed above and the 19 defendants listed in Section IV of Plaintiff's Second Amended Complaint stems from plaintiff's omission of RUO Jennifer Gagne in that section of his pleading.  Further, plaintiff has significantly complicated matters by using multiple spellings for the names of a number of defendants.  He refers to defendant Bronson as "Brunson", defendant Dena Andrews as "Dene" Andrews, and defendant Chaffee as "Chafer."  In addition, plaintiff refers to RUO Jennifer Gagne as "Officer Ganye."  This alternative spelling is confusing, given that RUO D. Gayne and Sergeant Dennis Grandy are named defendants.  In an effort to avoid confusion, the spelling which appears above in the list of defendants will be used, unless an alternative spelling appears within quoted material.

Dennis Grandy, Donald King, Christopher King,[2] and Ramon Bronson violated his Eighth Amendment rights on the same date by "looking on" and "failing to protect him."  (2nd Am. Compl. ¶¶ 26-30, 63, 64 docket # 68).  On February 11, 2010, RUO Jennifer Gagne allegedly retaliated against plaintiff in violation of his First Amendment rights by posting a note on his cell door which included information about plaintiff's family and referred to him as a predator.  (*Id.* at ¶¶ 34, 35, 65).  Sergeant Mario Cunningham allegedly refused to take the note to RUM Embry for investigation when plaintiff demanded that he do so.  (*Id.* at ¶¶ 36, 65-66).  On July 12, 2010, RUO Gorman and Officer Lames allegedly violated plaintiff's Eighth Amendment rights when plaintiff's hand was jammed in a food slot.  (*Id.* at ¶¶ 52-53, 67).  Plaintiff alleges that defendants Embry, Beak, Huss, Warden Smith, Figueroa, Kelly, Sherk, Finnerty, J. Smith, and Chaffee violated his Eighth Amendment rights based on the condition of his Unit 1 cell at ICF during a two-month period from July 16, 2010, through approximately September 15, 2010.[3]  (*Id.* at ¶¶ 58-61, 68-69).

The matter is now before the court on a motion for summary judgment by thirteen of the twenty named defendants based on the affirmative defense provided by 42 U.S.C. § 1997e(a).[4] (docket # 69).  For the reasons set forth herein, I recommend that all plaintiff's claims against defendant Mario Cunningham be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C.

---

[2]This is based on a highly indulgent reading of plaintiff's Second Amended Complaint. Plaintiff refers to a "J. King" in paragraph 28 of his Second Amended Complaint, but there is no defendant named J. King.  I have assumed that plaintiff intended to direct this allegation against defendant Christopher King, because plaintiff had already made allegations against defendant Donald King earlier in paragraph 28.

[3]All other claims have been dismissed.  (docket #s 7, 8, 67).

[4]Briefing on defendants' motion for summary judgment ended in December 2013.  (*see* docket #s 100-03).  On August 1, 2014, the matter was referred to me pursuant to Administrative Order 14-064.  (docket # 106).

§ 1997e(c) for failure to state a claim upon which relief can be granted. I recommend that all plaintiff's claims against defendants D. Gayne and Unknown Lames be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure, for lack of service of process. This report and recommendation serves as plaintiff's notice of impending dismissal. I recommend that defendants' motion for partial summary judgment (docket # 69) be granted in part and denied in part. I recommend that the motion be denied (1) with regard to plaintiff's Eighth Amendment claim against defendant Andrews based on the February 3, 2010 incident, and (2) with regard to plaintiff's First Amendment retaliation claim against Jennifer Gagne based on events which allegedly occurred on February 11, 2010. I recommend that the remainder of defendants' motion be granted and that all plaintiff's claims against defendants Willie Smith, Erica Huss, Ronald Embry, Leslie Beak, John Kelley, Paul Gorman, Aaron Sherk, Brian Chaffee and Jeremy Smith be granted and that plaintiff's claims against these defendants be dismissed. If this report and recommendation is adopted, plaintiff's only remaining claims will be his Eighth Amendment claims against defendants Jennifer Gagne, Ruth Finnerty, Dena Andrews, Dennis Grandy, Donald King, Christopher King, and Ramon Bronson based on the alleged use of excessive force and failure to intervene on February 3, 2010, and his First Amendment retaliation claim against Jennifer Gagne based on the plaintiff's allegations that on February 11, 2010, Gagne threatened him and posted a note to his cell door related to the alleged threat. I recommend that the order that stayed consideration of plaintiff's motion for partial summary judgment (9/30/13 Order, docket # 98) be modified such that the stay is lifted as to plaintiff's remaining claims and that the defendants named in those claims be directed to file a response to plaintiff's motion (docket # 84) within 28 days after the court enters its order addressing this report and recommendation.

**Applicable Standards**

A.    Summary Judgment Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th

Cir. 2009).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056.  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence

is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

      B.    <u>Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies</u>

      Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; Booth, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

      In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

-7-

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[5] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware

---

[5]A copy of the policy directive is found in the record. *See* docket # 70-2, ID#s 400-06; *see also* docket # 101-2, ID#s 713-16.

of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and

Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate serving lengthy prison sentences in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. He is currently an inmate at the Marquette Branch Prison (docket # 107). His claims

-10-

arise out of his confinement at the Ionia Maximum Correctional Facility (ICF), during the period from February 3, 2010, through September 15, 2010.  The defendants are Stare employees ICF.

Plaintiff suffers from mental illness: "psychotic depression, P.T.S.D., insomnia, [and] anxiety."  (Plf. Decl. ¶ 38, docket # 81, ID# 586).  He pursued a total of eighteen grievances at ICF through Step III decisions.  (docket # 70-3, ID#s 408-12).  Fourteen grievances are unrelated to plaintiff's remaining claims in this lawsuit.  Four grievances (Defendants' Exhibits E, N, R, S) warrant closer examination.

1.    Exhibit S

On March 5, 2010, ICF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ICF-10-03-546-17z (Exhibit S, docket # 70-20, ID# 507). Plaintiff's grievance is set forth below:

> On [February 3, 2010], in between the hours of 3:30 and 4:30, I was escorted to the B-Wing shower by Officers Andrews, Finnerty and Ganye.  Before we entered the shower area Ganye snatched my handcuffs and when we entered right in front of the back showers, she lifted my handcuffs and Ganye and Finnerty repeatedly punched me in my scrotum several times causing me to bend over and then Gayne pushed me on the shower floor causing me to bust my bottom lip.  Each of these actions were done under the observation of officers D. King and Grandy who were posted with [their] hands behind their back in a "parade rest fashion" in front of the Unit 2 laundry room, c/o Bronson who was in the bubble and Sgt. King who was supervising the unit from the A-side at this time.  Approximately 3 minutes after the incident RUM Embry and Psych Westbrook entered the unit, but I couldn't speak to them because Sgt. King started yelling telling me to shut up.  When I returned to my cell a pork tray was sitting on my bed which Finnerty and Ganye both spit in.  I demand a camera review, investigation, and prosecution.  I feel my life is threatened by retaliation.

(*Id.*).  Plaintiff's grievance was denied at Step I of the grievance process because it was untimely. (docket # 70-20, ID# 508).  He pursued an appeal.  (*Id.* at ID# 505).  On May 28, 2010, the warden gave the Step II response:

Following a review of the Step I grievance/response and the Step II appeal it is apparent that this issue should be addressed.  In your appeal you state that this issue was not properly investigated.

Due to the serious allegations made in your grievance, this issue will be forwarded for investigation.  Once the investigation is completed, if warranted, appropriate action will be taken.

(docket # 70-20, ID# 506).

Plaintiff gave the following reasons for filing a Step III appeal:

Sgt. Wenzel failed to properly investigate fellow 2nd shift staff who assaulted me, and RUM Embry who is the unit manager and reviewer failed to ensure that this procedure was properly carried out.  I appealed to the warden who said that this issue would be properly investigated, but allowed Sgt. Greenfield who is also a fellow 2nd shift sgt. in unit two to respond and falsify grievance exactly as Sgt. Wenzel did, 60 days after Sgt. Wenzel's response in violation of 03.02.130.  I still have not received a proper investigation, staff violated my rights.

(docket # 70-20, ID# 505).

On August 11, 2010, the Grievance and Appeals Section gave a Step III response stating that plaintiff had requested an investigation and advised him that his grievance would be considered resolved when the current investigation was completed:[6]

ICF staff were contacted at Step III regarding the status of the investigation.  The original investigator assigned to the case at Step II has left and a new investigator has been assigned.  Because your requested relief at Step III was to have a proper investigation conducted, your grievance will be considered resolved upon the completion of the current investigation.

(docket # 70-20, ID# 504).

---

[6]The grievance number at Step III is Grievance No. ICF-10-03-546-26a, rather than Grievance No. ICF-10-03-546-17z which appears in the other documents found in Exhibit S.

2.    Exhibits R and N

On March 5, 2010, ICF's grievance coordinator received a grievance regarding the note posted on plaintiff's cell window and assigned it Grievance No. ICF-10-03-0970-17I.  (Exhibit R, docket # 70-19, ID# 501).  The facts alleged in this grievance are presented verbatim below:

> On the above date [February 11, 2010], after Officers Ganye and __ picked up trays, Ganye put a note on my window which read the names of my mother, grandmother, sister, brother, a phone number and address and "Predator" at the bottom.  She then stated, "if that doesn't work my cousins will go visit them if you don't stop that grievance."  (This officer was referring to a grievance I wrote about a incident a week before where she and another officer assaulted me.)  I immediately demanded Sgt. Cunningham to retrieve this note off my window and turn it in to RUM Embry for investigation.  Officer Ganye has threatened the lives of me and my family and got my personal information out of the ARUS' office to do so and threatened to give other prisoners my families addresses.  She is in violation of 03.03.130, 02.03.130, 02.03.107.  Discipline is warranted in accordance with MCL 423.501 and penalties under MCL 19.143 Section D (I, E).
> CAMERA REQUESTED.

(Exhibit R, docket # 70-19, ID# 501).  On April 3, 2010, the grievance was denied at Step I. Plaintiff failed to produce any evidence supporting his allegations.  "No violation of policy or procedure [was] found to exist."[7]  (*Id.* at ID# 502).

Plaintiff gave the following reasons for pursing a Step II appeal:

> Sgt. B. Wenzel alleges that I didn't provide any information to cast doubt on Officer Ganye's actions.  I provided the information, witnesses and requested a camera review and provided the names of the supervisors involved, it is up to the respondent and reviewer to investigate my allegations.  I demand the proper investigation in order for my remedies to be exhausted so I can have prosecution served at the proper level.  Staff are continuing to harass and retaliate against me and cover violations.

(*Id.* at ID# 499).  On August 26, 2010, the warden gave a Step II response stating that plaintiff's appeal was denied for lack of merit:

---

[7]The grievance number at Step I is Grievance No. "ICF 2010 03 0557 17I," rather than Grievance No. ICF-10-03-0970-17I which appears in the other documents found in Exhibit R.

In this grievance you claim Officer Gagne threatened you and your family members in retaliation for a grievance you previously submitted.

According to the Step I respondent, Sgt. Wenzel, you failed to provide any evidence or documentation to substantiate your claim of staff impropriety.  No further information or witness statements were provided during the interview.

In your appeal you state Sgt. Wenzel's response was insufficient, he failed to address the information or to interview staff involved in regards to your claims.  RUO Gagne and Officer Cunningham have been interviewed for this response to provide comments to your allegations.  Both RUO Gagne and Officer Cunningham report this alleged event did not take place and that your statements are totally false.  In addition, there is no video evidence of this alleged [incident] known to exist.  As you have failed to support your accusations this grievance appeal is denied for lack of merit.

(docket # 70-19, ID# 500).

Plaintiff pursued a Step III appeal.  On September 10, 2010, the Grievance and Appeals Section issued the following Step III decision:

Your Step III grievance, including any materials included from your appeal from Step II, has been fully reviewed and considered by the Grievance and Appeals Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  The responses you received at Steps I and II reflect that your issues were in fact considered and appropriately investigated at the facility level.  As there is no additional information or basis found for relief at Step III, the Step II decision is upheld.

(docket # 70-19, ID# 498).  Plaintiff received the Step III response on September 10, 2010.  (Plf. Decl. ¶ 19, docket # 81).

On March 5, 2010, ICF's grievance coordinator received a grievance identical to the grievance addressed above. The grievance was assigned Grievance No. ICF-10-03-0970-17I. (Exhibit N, docket # 70-15, ID#s 474).  Plaintiff  received the same Step I response.  (*Id.* at 475).  The processing of this grievance parted company with the above-discussed grievance at the Step II of the MDOC's grievance process.  Plaintiff gave the following reason for his appeal to Step II:

Step II – Reason For Appeal

-14-

> I asked Sgt. Wenzel in the first step grievance to review the CAMERA, which shows Sgt. Cunningham taking a threatening note off my outside cell window that C/O Ganye placed there moments earlier, to scare me out of grieving staff assault that occurred on Feb. 3rd. This note included the phone #'s and addresses of my family members in different states. The 1st step grievance coordinator misplaced the grievance and I.D. # and I am just now receiving the opportunity to appeal.  There is no policy that says I have to stack any evidence against staff impropriety to have them investigated.

(docket # 70-15, ID# 472).  The warden gave the same Step II response, but the warden's response is dated October 5, 2010 (*Id.* at ID# 473), rather than August 26, 2010 (*see* docket # 70-19, ID# 500).

Plaintiff's statement of his reason for pursuing a Step III appeal was different, as was the Step III response.  (docket # 70-15, ID#s 471-72).  On February 1, 2011, plaintiff's Step III appeal was "rejected" because it was untimely:

> The record presented was reviewed with the appeal to Step III.  All relevant information was considered.  Based on the review, it was found that the grievant submitted his Step III appeal in an untimely manner, without reasonable cause for delay.  This was done in violation of PD 03.02.130.  No response will be forthcoming at this Step.  The grievance appeal is rejected.

(docket # 70-15, ID# 471).


3.     Exhibit E

On July 20, 2010, plaintiff filed a grievance and the grievance coordinator assigned it Grievance No. ICF-10-07-1799-22z (Exhibit E, docket # 70-6, ID# 426).  Plaintiff complained that RUM Embry ordered that plaintiff be placed in cell 1-33 which had no mattresses, light fixture, no sprinkler system, and that he cell's window was welded shut and it was too warm.  Defendants Figueroa, Smith, and Kelley purportedly failed to respond to plaintiff's complaints about these aspects of his prison cell:

> On the above date [July 16, 2010], RUM Embry ordered C/O Gorman to place me in cell 1-33.  There is no mattress, light fixture, no sprinkler system, and the only window in the cell is welded shut.  Per P.D. 04.05.120, each cell shall be properly furnished in accordance with #s 3, 7, 10, 12, 17, 18, & 25.  I made the RUM, unit sergeants and each officer Figerola, Montoya, Smith, Sgt. Greenfield, Sgt. Kelly and others whose names I don't know aware of the condition of my cell and nothing has been done.  I have a heat related illness detail from Healthcare and have received no relief when temperatures are over 80 degrees.  These conditions of confinement are unconstitutional and relief is warranted accordingly with M.D.O.C. policy & procedure and operating procedure, and the 1st, 8th, and 14th Amendment to the U.S. Constitution.

(docket # 70-6, ID# 426).  RUM Embry gave the following Step I response:

> I did not order or tell anyone to move prisoner Sanders to Unit 1 or any particular cell in Unit 1.  Staff should be more attentive to the concerns of prisoners such as this one.  Prisoner has since been moved to another cell in the Unit.  Grievance denied.

(*Id.*).  Plaintiff states that he received the Step I response on September 24, 2010.[8]  (Plf. Decl. ¶ 28, docket # 81, ID# 583).

On January 7, 2011, plaintiff mailed his Step II appeal to ICF's warden.  (Plf. Decl. ¶ 30, docket # 81, ID# 583).  Plaintiff gave the following statement of reasons for pursuing a Step II appeal:

> Step II – Reason for Appeal
> The fact that I was moved later does not negate the violation of policy and procedure and my rights.  L. Beak is the ARUS who answers to R. Embry who's boss is ASS Warden E. Huss.  Somebody must be held accountable for approving this move, failure to supervise and enforce policy and procedure and for violating my rights.  I was placed in a restriction cell with no mattress, lights, a welded shut window, no sprinkler system and was denied the proper cell furnishings or assistance from healthcare or any supervisor staff for 2 months.

---

[8]Under paragraph BB of Policy Directive 03.02.130, plaintiff was required to request a grievance appeal form and send the completed form to the prison's Step II grievance coordinator within ten business days after receiving the Step I response.  (docket # 70-2, ID# 404).  Plaintiff states that he made several requests for appeal forms (Plf. Decl. ¶ 29, docket # 81, ID# 583), but there is no evidence that he made such requests in a timely fashion.  In addition, the record establishes that plaintiff had access to grievance appeal forms in September, October, November, and December 2010.  (*see* docket #s 70-9, 70-11, 70-13, 70-14, 70-16, 70-17, ID#s 440, 452, 462, 467, 478, 483).

(docket # 70-6, ID# 424).  ICF's grievance coordinator received the Step II appeal on March 15,

2011.  (*Id.*).  On April 29, 2011, Warden Prelesnik denied plaintiff's Step II appeal:

> The Step I grievance/response and the Step II grievance have been reviewed.  You were moved out of that cell after the conditions of your cell you were placed in were noted.  A maintenance request was submitted and the cell was repaired.  It should also be noted the Step II grievance is untimely the date of the incident was 7/16/2010; the Step II grievance was not received until 03/15/2011.  Therefore, the grievance is denied at this level of the grievance process.

(docket # 70-6, ID# 425).

> Plaintiff gave the following reasons for pursuing a Step III appeal:

> After transferring, I did not receive my step one response until December.  Breedlove again failed to send me a step two appeal form and I was forced to use another appeal from to exhaust my remedies.  L. Beak, R. Embry and E. Huss ordered staff to place me in a cell with no lights, no mattress, sprinkler head, no ventilation, and a welded shut window over 60 days, I was denied healthcare and punished for writing grievances.  The move was done weeks later by an officer not Embry or Huss.

(docket # 70-6, ID# 424).  On June 28, 2011, the Grievance and Appeals Section denied plaintiff's

Step III appeal:

> Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".  The response you received at Steps I and II reflect that your issue was in fact considered and appropriately investigated.  As there is no additional information or basis for relied at Step III, the Step II decision is upheld.

(docket # 70-6, ID# 423).

## **Discussion**

Defendants have raised the affirmative defense that plaintiff did not properly exhaust

his administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Exhaustion is

mandatory. *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered." *Jones v. Bock*,

549 U.S. at 220.


       A.     <u>February 3, 2010</u>

       Plaintiff alleges that on February 3, 2010, he was assaulted by Officers Jennifer

Gagne and Ruth Finnerty.  He also alleges that defendants Andrews, Grandy, J. King, and Bronson

"looked on" and failed to intervene and protect him from the female corrections officers.  (docket

# 7 at ID# 80).  Defendant Andrews seeks dismissal of plaintiff claim against him because plaintiff's

grievance (Ex. S, Grievance Number ICF-10-03-546-17z, docket # 70-20, ID#s 508) did not state

any facts indicating that Andrews applied excessive force and it did not list him among the

individuals who purportedly watched an assault by Gagne and Finnerty.  I find that the allegations

found in plaintiff's grievance, which specified that Dena Andrews was one of three escorting

officers, placed Andrews in very close proximity when the alleged assault by Gagne and Finnerty

occurred, and described no action taken by defendant Andrews to stop it, was adequate to provide

Andrews with notice of the claim being asserted against him.  I find that plaintiff's grievance and

related appeals were sufficient to properly exhaust plaintiff's Eighth Amendment claim against

defendant Andrews.


       B.     <u>February 11, 2010</u>

       Plaintiff alleges that on February 11, 2010, defendant Gagne allegedly retaliated

against him in violation of his First Amendment rights by posting a note on his cell door which

included information about plaintiff's family and referred to him as a predator.  Plaintiff alleges that

he "demanded" that Sergeant Cunningham retrieve the note off the cell window and turn it in to RUM Embry for investigation.  (2nd Am. Compl. ¶ 36).  Plaintiff alleges at the time he yelled out his demand, Sergeant Cunningham was in the process of  "heading to" address an incident involving another ICF prisoner.  (*Id.*).  Plaintiff alleges that Cunningham failed to supervise Jennifer Gagne on the date in question.  (*Id.* at ¶ 66).  Sergeant Cunningham cannot be held liable under a *respondeat superior* theory.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) ("Under § 1983, there is no *respondeat superior* or vicarious liability.").  Plaintiff makes conclusory allegations that Cunningham conspired with Gagne and falsified unspecified documents to cover-up Gagne's actions.  (2nd Am. Compl. ¶ 66).  These allegations fail to state a claim.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Alexander v. Michigan*, No. 1:13-cv-1372, 2014 WL 2604639, at * 5 (W.D. Mich. June 11, 2014) (collecting cases).  I recommend that all plaintiff's claims against defendant Cunningham be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1), and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted.

Defendant Gagne argues that Grievance No. ICF-10-03-0970-17I, Exhibit N, did not properly exhaust plaintiff's claims against her because this grievance was denied at Step III by the Grievance and Appeals Section because it was untimely.  (Def. Brief at 11; *see* docket # 70-15, ID# 471).  She essentially ignores Exhibit R, another grievance regarding the same incident, which was denied on the merits rather than being dismissed as untimely.  (Ex. R, docket # 70-19, ID# 500).  Defendant makes a passing argument that Exhibit N should control because that grievance was decided after Exhibit R.  (Def. Brief at 12).  The only legal authority cited, *Reed-Bey v. Pramstaller,* 603 F.3d 322 (6th Cir. 2010), undercuts rather than supports defendant's argument.  In *Reed-Bey*,

the Sixth Circuit held that procedural bars do not apply where the State declines to enforce its own procedural rules. *Id.* at 324-25. Here, the MDOC denied Exhibit R on the merits. It did not enforce any procedural bar. I find no legal authority for the proposition that the MDOC can somehow "unexhaust" a properly exhausted grievance and bar consideration of the issues raised therein through the MDOC's later processing of another grievance. I recommend that the portion of defendants' motion seeking dismissal of plaintiff's retaliation claim against Jennifer Gagne for failure to exhaust available administrative remedies be denied.

C.     July 16, 2010, through September 15, 2010

Plaintiff alleges that defendants Embry, Beak, Huss, Warden Smith, Figueroa, Kelly, Sherk, Finnerty, J. Smith, and Chafer violated his Eight Amendment rights based on the condition of his cell from July 16, 2010, through approximately September 15, 2010. Plaintiff complained about the conditions of his cell in Grievance No. ICF-10-07-1799-22z. His grievance was rejected as untimely at Step II of the appeals process and upheld on that basis at Step III. (Ex. E, docket # 70-6, ID#s 423, 425). I find that plaintiff did not properly exhaust these claims and recommend that they be dismissed.

**Recommended Disposition**

For the foregoing reasons, I recommend that all plaintiff's claims against defendant Mario Cunningham be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1), and 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted. I recommend that all plaintiff's claims against defendants D. Gayne and Unknown Lames be dismissed under Rule 4(m)

-20-

of the Federal Rules of Civil Procedure, for lack of service of process. This report and recommendation serves as plaintiff's notice of impending dismissal. I recommend that defendants' motion for partial summary judgment (docket # 69) be granted in part and denied in part. I recommend that the motion be denied (1) with regard to plaintiff's Eighth Amendment claim against defendant Andrews based on the February 3, 2010 incident, and (2) with regard to plaintiff's First Amendment retaliation claim against Jennifer Gagne based on events which allegedly occurred on February 11, 2010. I recommend that the remainder of defendants' motion be granted and that all plaintiff's claims against defendants Willie Smith, Erica Huss, Ronald Embry, Leslie Beak, John Kelley, Paul Gorman, Aaron Sherk, Brian Chaffee and Jeremy Smith be granted and that plaintiff's claims against these defendants be dismissed. If this report and recommendation is adopted, plaintiff's only remaining claims will be his Eighth Amendment claims against defendants Jennifer Gagne, Ruth Finnerty, Dena Andrews, Dennis Grandy, Donald King, Christopher King, and Ramon Bronson based on the alleged use of excessive force and failure to intervene on February 3, 2010, and his First Amendment retaliation claim against Jennifer Gagne based on the plaintiff's allegations that on February 11, 2010, Gagne threatened him and posted a note to his cell door related to the alleged threat. I recommend that the order that stayed consideration of plaintiff's motion for partial summary judgment (9/30/13 Order, docket # 98) be modified such that the stay is lifted as to plaintiff's remaining claims and that the defendants named in those claims be directed to file a response to plaintiff's motion (docket # 84) within 28 days after the court enters its order addressing this report and recommendation.

Dated: September 30, 2014      /s/ Phillip J. Green
                                              United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006)